PER CURIAM.
The City of Midfield (“Midfield”), Officer Jason Davis, and Sgt. Otis Brown (collectively referred to as “the Midfield defendants”) petitioned this Court for a writ of mandamus, directing the Jefferson Circuit Court to enter a summary judgment in their favor, based on State-agent immunity, on claims filed against them by Patrick Williams (“Patrick”) and Elizabeth W. McElroy, as successor administratrix of the estate of Willie Lee Williams (“the estate”). We grant the petition and issue the writ.

Facts and Procedural History

On March 4, 2009, Officer Davis, an officer with the Midfield' Police Department (“the department”), stopped Marvin Brown (“Marvin”) as he was driving an all-terrain vehicle (“ATV”) in Midfield. During the traffic stop, Officer Davis asked Marvin for identification, including, among other things, his Social Security number. Officer Davis gave Marvin’s Social Security number to the department’s dispatcher, who discovered that Marvin had an outstanding felony warrant issued against him in Tennessee. The dispatcher did not state over the radio that there was a warrant for Marvin, but she did ask whether Officer Davis was “secure.” Sgt. Brown testified that the question “are you secure” is “code language meaning that there are warrants outstanding for the suspect’s arrest.” Sgt. Brown, who was the shift supervisor for the department that day, overheard on his radio Officer Davis’s exchange with the dispatcher. Upon hearing the question “are you secure?,” Sgt. Brown began driving to Officer Davis’s location to provide him with backup.
In the meantime, while Officer Davis was talking to the dispatcher, Marvin restarted the ATV and started to drive away. Marvin testified that Officer Davis had told him that he was going to take Marvin to Midfield jail and had threatened to use his Taser gun on him. Officer Davis pursued Marvin. During the pursuit, the ATV collided with Officer Davis’s patrol car. Marvin then abandoned the ATV and fled on foot. Officer Davis continued to pursue, and, eventually, Marvin got into a Honda Accord automobile that was parked in a driveway on Nail Street and drove away.
Sgt. Brown, who had been listening to Officer Davis on the police radio, arrived at Nail Street in time to see Officer Davis standing on the side of the road, pointing to a dark-colored vehicle that was driving away and talking into the police radio, saying that the suspect was in that vehicle. Sgt. Brown testified by affidavit as follows:
“At this point in time I knew that the suspect had one or more warrants out for his arrest, [had] fled from Officer Davis, [had] hit Officer Davis’[s] car, [had] abandoned the ATV, [had] obtained an automobile and [had] continued to flee at a high rate of speed. Based upon what I heard and observed, I suspected that the suspect had stolen the automobile from one of the homes on Nail Street.[1] I did not know if there were any other individuals inside of the car with him. With all of this in mind, I made the judgment call to turn my lights and sirens on and follow the suspect.”
Sgt. Brown pursued Marvin onto the Bessemer Superhighway, where, Sgt. Brown testified, he noted that Marvin was driving recklessly and was exceeding the *1161 speed limit. Sgt. Brown continued to pursue Marvin from the Bessemer Superhighway into Roosevelt City, back onto the Bessemer Superhighway, and, eventually, into the City of Brighton. Sgt. Brown testified that he exercised his discretion throughout the chase, determining at various points whether to continue or to abandon his pursuit. He testified that, during his pursuit, he exceeded the speed limit but that, “[a]t all times during the pursuit, [he] operated [his] emergency vehicle with due care and with due regard for the safety of others.” He also testified that, “[a]t all times, [he] was acting in full compliance with Alabama law and the Midfield Police Department policy.”
Marvin continued to flee through the City of Brighton, until, at the intersection of 48th Street and Huntsville Avenue, the Honda Accord collided with a truck driven by Patrick, in which Patrick’s grandmother, Willie Lee Williams, was a passenger. The collision caused the truck to flip over several times. Willie Lee died at the scene, and Patrick suffered severe injuries.
The testimony is disputed as to the events immediately preceding the collision. Marvin testified in his deposition that he stopped at the stop sign at the intersection of 48th Street and Huntsville Avenue but that he saw Sgt. Brown’s patrol car coming up behind him too quickly to stop. Marvin testified that he knew a collision was imminent, that he closed his eyes, and that he was hit from behind and propelled into the intersection. Marvin also testified that there was damage to the back of the Honda Accord after the collision that had not been there before the collision. However, when asked directly whether Sgt. Brown’s patrol car hit the Honda Accord, Marvin testified that he did not recall.
Sgt. Brown and some of the eyewitnesses testified that Marvin did not stop at the stop sign at the intersection, but continued into the intersection at a high rate of speed, colliding with Patrick’s truck. Sgt. Brown also testified that there had not been, any contact between his patrol car and the Honda Accord. Cliff Prosser, a consulting technician who was asked by the Jefferson County Sheriffs Department to investigate the accident, testified by affidavit:
“[Marvin] failed to stop at the stop sign on the east side of 48th Street’s intersection with Huntsville Avenue, drove into the intersection, and struck the F150 truck. The Honda Accord was traveling substantially in excess of the posted speed limit of 25 miles per hour as it entered the intersection. The speed of the Honda [Accord] was between approximately 49 and 59 miles per hour. Based upon my investigation, the most likely speed of the Honda Accord at the moment of impact is between 51 to 55 miles per hour.
“In my opinion, it is impossible for this collision to have been caused by a collision between the Honda Accord and the police car. In my opinion, it is impossible for the police ear to have hit the Honda Accord at a dead stop at the stop sign on 48th Street and caused it to accelerate to speeds in excess of 50 miles per hour before it hit the truck. I saw no evidence indicating a collision between the police car and the Honda Accord occurred at the intersection of Huntsville Avenue and 48th Street. The damage on the rear of the Honda Accord is not consistent with such a theory. However, the damage on the rear of the Honda Accord is consistent with rotation of the vehicle following its impact with the F150.”
Marvin pleaded guilty in criminal proceedings to charges of manslaughter and first-degree assault and was sentenced to serve time in prison. In May 2010, Pat *1162 rick and the estate sued Marvin in the Jefferson Circuit Court, alleging claims of wrongful death, negligence, and wantonness. Patrick and the estate also sued the Midfield defendants, alleging various negligence claims. The Midfield defendants moved the circuit court to dismiss the claims against them, alleging, among other things, that Officer Davis and Sgt. Brown were entitled to police-officer immunity under to § 6-5-338(a), Ala.Code 1975, and that, because the officers were immune from suit, the claims against Midfield also failed. The circuit court denied the motion, and the Midfield defendants petitioned this Court for mandamus relief, which was denied in May 2012.
While the Midfield defendants’ first mandamus petition was pending, Patrick and the estate amended their complaint. They alleged claims of negligence per se against Midfield for the negligence of Sgt. Brown, claims of negligent supervision and training against Midfield, and claims of general negligence against Officer Davis and Sgt. Brown and, derivatively, against Midfield. In May 2013, the Midfield defendants filed a motion for a summary judgment, again arguing, among other things, that Officer Davis and Sgt. Brown were immune from suit pursuant to § 6-5-338 and that the claims against Midfield were barred by the combined effect of § 6-5-338 and § 11-47-190, Ala.Code 1975. The circuit court denied the motion, finding that “there [were] material issues of fact in dispute and that the [Midfield] Defendants [were] not entitled to judgment as a matter of law.” The Midfield defendants now seek mandamus relief from the denial of their motion for a summary judgment.

Analysis

This Court’s recent decision in Ex parte City of Montgomery, 99 So.3d 282 (Ala.2012), sets forth the legal standard applicable in this case. In Ex parte City of Montgomery, the City of Montgomery and several police officers petitioned this Court for a writ of mandamus, arguing that certain claims against them were barred by the doctrine of State-agent immunity. This Court stated:
“‘“While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion grounded on a claim of immunity is reviewable by petition for writ of mandamus ....
“ ‘ “Summary judgment is appropriate only when ‘there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.’ Rule 56(c)(3), Ala. R. Civ. P.... A court considering a motion for summary judgment will view the record in the light most favorable to the nonmoving party ...; will accord the nonmoving party all reasonable favorable inferences from the evidence ...; and will resolve all reasonable doubts against the moving party....
“ ‘ “An appellate court reviewing a ruling on a motion for summary judgment will, de novo, apply these same standards applicable in the trial court.... Likewise, the appellate court will consider only that factual material available of record to the trial court for its consideration in deciding the motion.” ’
“Ex parte Turner, 840 So.2d 132, 135 (Ala.2002) (quoting Ex parte Rizk, 791 So.2d 911, 912-13 (Ala.2000)). A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: ‘ “(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack *1163 of another adequate remedy; and (4) the properly invoked jurisdiction of the court.” ’ Ex parte Nall, 879 So.2d 541, 543 (Ala.2003) (quoting Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001)).
[[Image here]]
“Section 6-5-338(a)[, Ala.Code 1975,] provides:
“ ‘Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, ... and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.’
“The restatement of State-agent immunity as set out by this Court in Ex parte Cranman, [792 So.2d 392 (Ala.2000) ], governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a). Ex parte City of Tuskegee, 932 So.2d 895, 904 (Ala.2005). This Court, in Cranman, stated the test for State-agent immunity as follows:
“ ‘A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
[[Image here]]
“ ‘(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons;
[[Image here]]
[[Image here]]
“ ‘Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“‘(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“ ‘(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.’
“Cranman, 792 So.2d at 405. Because the scope of immunity for law-enforcement officers set forth in § 6-5-338(a) was broader than category (4) of the restatement adopted in Cranman, this Court, in Hollis v. City of Brighton, 950 So.2d 300, 309 (Ala.2006), expanded and modified category (4) of the Cranman test to read as follows:
“ ‘ “A State agent shall be immune from civil liability in his or her personal capacity when the. conduct made the basis of the claim against the agent is based upon the agent’s
[[Image here]]
“ ‘ “(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ *1164 arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala.Code 1975.” ’
“Hollis, 950 So.2d at 309. Additionally:
“ ‘ “This Court has established a ‘burden-shifting’ process when a party raises the defense of State-agent immunity.” Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006). A State agent asserting State-agent immunity “bears the burden of demonstrating that the plaintiffs claims arise from a function that would entitle the State agent to immunity.” 946 So.2d at 452. Should the State agent make such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in Cranman is applicable. The exception being argued here is that “the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.” 946 So.2d at 452. One of the ways in which a plaintiff can show that a State agent acted beyond his or her authority is by proffering evidence that the State agent failed ‘ “to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.” ’ Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003) (quoting Ex parte Butts, 775 So.2d at 178).’ ”
Ex parte City of Montgomery, 99 So.3d at 291-94 (quoting Ex parte Kennedy, 992 So.2d 1276, 1282-83 (Ala.2008)).[2]
It is undisputed that Officer Davis and Sgt. Brown are “peace officers” for the purposes of § 6-5-338(a) and that their alleged misconduct occurred while “in performance of [a] discretionary function within the line and scope of [their] law enforcement duties.” § 6-5-338(a). Thus, under Ex parte Cranman, as modified by Hollis v. City of Brighton, 950 So.2d 300, 309 (Ala.2006), Officer Davis and Sgt. Brown are entitled to State-agent immunity, and the burden shifts to Patrick and the estate to demonstrate that “ ‘one of the two categories of exceptions to State-agent immunity recognized in Cranman is applicable.’ ” Ex parte City of Montgomery, 99 So.3d at 293 (quoting Ex parte Kennedy, 992 So.2d at 1282).
In their response to the Midfield defendants’ motion for a summary judgment, Patrick and the estate argued that the second exception in Ex parte Cranman applies here. Specifically, they argued that, in pursuing Marvin, Officer Davis and Sgt. Brown were acting “beyond their authority” by violating various provisions of the department’s vehicle-pursuit and emergency-response policy (“the policy”) and § 32-5A-7, Ala.Code 1975.
As noted previously, “ ‘a plaintiff can show that a State agent acted beyond his or her authority by proffering evidence that the State agent failed “ ‘to discharge duties pursuant to detailed rules or regula *1165 tions, such as those stated on a checklist.’ ” ’ ” Ex parte City of Montgomery, 99 So.3d at 293-94 (quoting Kennedy, 992 So.2d at 1282-83, quoting in turn Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003)). The Midfield defendants argue that the “policy contains no ‘hard and fast rule’ or ‘detailed checklist’ governing when and when not to initiate and sustain a pursuit — i.e., it gives discretion to the police officer.” Midfield defendants’ petition, at 12. They also argue that Patrick and the estate have offered no evidence indicating that Officer Davis and Sgt. Brown acted beyond their authority under the policy.
Patrick and the estate cite various provisions of the policy with which, they argue, Officer Davis and Sgt. Brown failed to comply. First, they argue that, “[a]ccording to Midfield’s written policy governing vehicle pursuits, BEFORE initiating pursuit, the officer should consider several factors, including the seriousness of the violation, the risks involved in initiating the pursuit, and the route of the pursuit.” Patrick and the estate’s brief, at 7 (capitalization and emphasis in original). Patrick and the estate argue that Officer Davis had no information regarding the type of outstanding warrant against Marvin when he initiated pursuit. Id., at 21-22.
The factors to be considered before commencing pursuit are not presented in the policy as a checklist but, instead, as factors for officers to consider in exercising the discretionary duty under the policy to balance the danger to the public of pursuing a fleeing suspect against “the danger[] to the public of a suspect remaining unapprehended.” This exercise of discretion is protected under the doctrine of State-agent immunity. See Ex parte Estate of Reynolds, 946 So.2d 450, 457 (Ala.2006) (holding that Ex parte Cranman applied to protect State officers in the exercise of discretion where a policy set forth “criteria by which decisions were made and set out duties the defendants were required to perform,” but noting that “‘in the final analysis a significant degree of discretion is left to the defendants in their exercise of this particular function’ ” (quoting Grant v. Davis, 537 So.2d 7, 9 (Ala.1988))).
Patrick and the estate also argue that before initiating pursuit Officer Davis had to “give a specific reason for pursuit, including known violations,” and that Officer Davis did not give any such reason. They cite in support of this argument the deposition testimony of Dr. Michael Lyman, a police-training expert, who testified that""
“the pursuit should not have been initiated when, the offense was minor and non-violent, especially in light of the fact that it was rush hour and there were civilians in harm’s way. In his expert opinion, the ‘risk of the continuance of the pursuit outweighed the importance of the apprehension of the subject.’ It is Dr. Lyman’s expert opinion that the ‘pursuit was inconsistent with their policy in Midfield. I take the position that he did not have ... enough information to determine that the pursuit would be justified and consistent with the Midfield policy for pursuit.’ ”
Patrick and the estate’s brief, at 22-23. However, this testimony, which was actually directed at Sgt. Brown’s decision to pursue Marvin, is not evidence of Officer Davis’s alleged failure to “give a specific reason for pursuit.” Moreover, the radio transcript indicates that Officer Davis pursued Marvin because “[h]e [was] running” from Officer Davis following a routine traffic stop. Patrick and the estate cite no evidence or authority indicating that running from a police officer during a traffic stop is not “a specific reason for pursuit” under the policy. Even assuming that Dr. Lyman’s testimony alleges a violation of *1166 the policy by Sgt. Brown, the violation would relate to Sgt. Brown’s exercise of discretion in determining whether pursuit was justified, not a “‘fail[ure] ‘“to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.’ ” ’ ” Ex parte City of Montgomery, 99 So.3d at 294 (quoting Kennedy, 992 So.2d at 1282-83, quoting in turn Giambrone, 874 So.2d at 1052). Thus, Patrick and the estate have not demonstrated that either Officer Davis or Sgt. Brown acted beyond his authority in this regard.
Patrick and the estate also argue that Sgt. Brown violated the following provision of the policy: “Officers should never pursue just because another officer is doing so.” Patrick and the estate argue: “[Sgt.] Brown had no information that the suspect had committed a felony involving violence. ‘[A]bsent that information, the pursuit of a minor offender is unreasonable because the existence of pursuit itself poses a greater threat to the public than the capture of the violator justifies.’” Patrick' and the estate’s brief, at 23-24 (quoting Dr. Lyman’s deposition testimony). Patrick and the estate also offer testimony from Johnnie Johnson, Jr., retired chief of police for the cities of Birmingham, Bessemer, and Brighton that Sgt. Brown’s actions in pursuing Marvin were “unreasonable.” However, the “reasonableness” of Sgt. Brown’s decision to pursue Marvin is a different question than whether he continued pursuit “only because another officer, [was] doing so,” in violation of the policy.
Sgt. Brown testified in his affidavit:
“I knew that [Marvin] had one or more warrants out for his arrest, [had] fled from Officer Davis, [had] hit Officer Davis’[s] car, [had] abandoned the ATV, [had] obtained an automobile and [had] continued to flee at a high rate of speed. Based upon what I heard and observed, I suspected that [Marvin] had stolen the automobile from one of the homes on Nail Street. I did not know if there were other individuals inside the car with him. With all of this in mind, I made the judgment call to turn my lights and sirens on and follow [Marvin].”
Patrick and the estate have cited no evidence contradicting Sgt. Brown’s affidavit testimony. Thus, they have not demonstrated that Sgt. Brown violated a detailed rule or regulation in this regard.
Patrick and the estate also argue that “[Sgt.] Brown should have terminated the pursuit when it became clear that continuing would jeopardize the safety of others.” Patrick and the estate’s brief, at 24. Patrick and the estate have not identified a specific provision of the policy that Sgt. Brown allegedly violated in this regard. Instead, they cite Sgt. Brown’s testimony that “Marvin was not stopping for traffic signs or lights, he was weaving in and out of traffic and almost lost control of his vehicle,” Patrick and the estate’s brief, at 24, and Chief Johnson’s testimony that “[Sgt. Brown] failed to step into the supervising role to inquire as to information about this chase, whether or not the chase was justified based on information that the officer had at his control at that moment and whether or not the chase should even initiate or continue.”
Even assuming that Patrick and the estate are alleging a violation of the provisions of the policy relating to the role of a shift supervisor, the alleged violation goes, again, to Sgt. Brown’s exercise of his discretion under the policy to determine whether pursuit was justified under the circumstances, not to “detailed ■ rules or regulations, such as those stated on a checklist.” Thus, Patrick and the estate have not demonstrated that Sgt. Brown *1167 acted “beyond his authority” in this regard.
Patrick and the estate also argue that Sgt. Brown acted beyond his authority by violating § 32-5A-7(c), Ala.Code 1975, by turning off his lights and siren during his pursuit of Marvin. Section 32-5A-7 provide§, in pertinent part:
“(a) The driver of an authorized emergency vehicle, when ... in the pursuit of an actual or suspected violator of the law ..., may exercise the privileges set forth in this section, but subject to the conditions herein stated.
“(b) The driver of an authorized emergency vehicle may:
[[Image here]]
“(3) Exceed the maximum speed limits so long as he does not endanger life or property;
[[Image here]]
“(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal ... and visual requirements of any laws of this state requiring visual signals on emergency vehicles.”
In support of their argument, Patrick and the estate cite Williams v. Crook, 741 So.2d 1074 (Ala.1999), in which this Court found that an officer had violated § 32-5A-7 by failing to turn on his lights or sirens while en route to respond to a report of a domestic disturbance. Here, however, although Sgt. Brown stated in his report regarding the accident that, “after going down several streets and turns, I lost sight of the vehicle and I radioed to my dispatcher that I had lost the vehicle.... I turned my lights and siren off because I had lost the vehicle,” Patrick and the estate have presented no evidence indicating that Sgt. Brown was exceeding the speed limit or acting under one of the other exemptions in § 32-5A-7(b) while his lights and sirens were off. Thus, Patrick and the estate have not demonstrated that Sgt. Brown violated § 32-5A-7 or that he acted beyond his authority in this regard.
Patrick and the estate also cite Blackwood v. City of Hanceville, 936 So.2d 495 (Ala.2006), for the proposition that, “where there are genuine issues of fact that exist [as to whether a police officer acted in violation of § 32-5A-7], neither the officer nor the city are entitled to judgment as a matter of law.” Patrick and the estate’s brief, at 29. However, as noted previously, Patrick and the estate have not demonstrated that there is a genuine issue of material fact as to whether Sgt. Brown violated § 32-5A-7. Therefore, Blackwood is inapposite.
Patrick and the estate also cite Seals v. City of Columbia, 641 So.2d 1247 (Ala.1994), for the proposition that, “where there is evidence of a procedure that made continued pursuit of a suspect unnecessary, there was a genuine issue of material fact regarding immunity.” Patrick and the estate’s brief, at 29. In Seals, this Court determined that the evidence established that when a roadblock was in place “the proper procedure” for a pursuing officer for the City of Columbia was to back off pursuit of a fleeing offender. 641 So.2d at 1248. This Court held:
“In opposition to the motion for summary judgment, Seals offered evidence tending to show that [Officer] Cook did not discontinue his pursuit of [the suspect] once the roadblock was in place.... Seals’s expert testified that [Officer] Cook acted negligently and that no pursuit was necessary because a roadblock was in place. Thus, [Seals’s] evidence created a genuine issue of material fact. The summary judgment was inappropriate and must be reversed.”
*1168 641 So.2d at 1250 (emphasis omitted). Here, Patrick and the estate argue that
“there was strong evidence that the high-speed pursuit through residential neighborhoods was unnecessary. Marvin was not an unknown suspect. [Officer] Davis knew Marvin from the neighborhood and had several prior encounters with him. The Midfield dispatcher quickly verified Marvin Brown’s identity and easily discerned that he was living at the same address where the chase was initiated. Clearly, Marvin Brown could have been arrested, if an arrest was called for, when he returned home to the Nail Street address.”
Patrick and the estate’s brief, at 29-30.
Although Patrick and the estate opine that Officer Davis and Sgt. Brown had an alternative to pursuing Marvin, they have not demonstrated that, like the officer in Seals, Officer Davis or Sgt. Brown violated an established “procedure” in choosing to pursue Marvin. Therefore, Seals is also inapposite.
Patrick and the estate did not present substantial evidence creating a genuine issue of material fact as to whether Officer Davis and Sgt. Brown “ ‘failed “ ‘to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist,’ ” ’ ” Ex parte City of Montgomery, 99 So.3d at 294 (quoting other cases), or acted beyond their authority in pursuing Marvin. Thus, they have not demonstrated that one of the exceptions to State-agent immunity under Ex parte Cranman applies here, and Officer Davis and Sgt. Brown are entitled to State-agent immunity.
In City of Crossville v. Haynes, 925 So.2d 944, 955 (Ala.2005), this Court stated:
“ ‘It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune. Section 6 — 5—338(b) provides: “This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers.” (Emphasis added.) On the other hand, if the statute does not shield the officer, it does not shield the city.’ ”
(Quoting Howard v. City of Atmore, 887 So.2d 201, 211 (Ala.2003) (citations omitted).) Thus, because Officer Davis and Sgt. Brown are entitled to State-agent immunity from the negligence and negligence per se claims brought against them, Midfield is also immune from suit on those claims. The Midfield defendants are entitled to a summary judgment on the ground of immunity on those claims.
Patrick and the estate have also asserted a claim against Midfield alleging negligent training and supervision based on the alleged “negligence, carelessness and uns-killfulness” of various fictitiously named defendants. The Midfield defendants have alleged no separate immunity ground related to this claim. Instead, they appear to assume that, if Officer Davis and Sgt. Brown are immune on the negligence and negligence per se claims against them, Midfield is immune on all the claims against it, including the negligent-training- and-supervision claim.
In Ex parte City of Montgomery, this Court addressed a similar issue. The plaintiffs in that case had asserted claims against the City of Montgomery alleging negligent hiring, training, and supervision, as well as claims of assault and battery, wantonness, and general negligence against both the City and various police officers. Citing Haynes, the City of Montgomery argued that, if the officers were *1169 immune from suit on the claims against them, the City of Montgomery was immune from suit on the claims against it, including the claims of negligent hiring, training, and supervision. This Court disagreed, stating:
“We note that the City [of Montgomery] has failed to identify the individual or individuals specifically charged with the hiring, training, and supervision of the police officers, much less whether the individual or individuals are police officers entitled to State-agent immunity. Therefore, the City [of Montgomery] has failed to carry its burden under Cranman and was not entitled to a summary judgment as to the negligent hiring, training, or supervision claims asserted against it.”
99 So.3d at 299 (footnote omitted).
Like the City of Montgomery, the Midfield defendants have not identified the “individual or individuals specifically charged with the ... training[ ] and supervision of the police- officers, much less whether the individual or individuals are police officers entitled to State-agent immunity.” 99 So.3d at 299. Thus, Midfield has not demonstrated that it is immune from suit on the negligent-training-and-supervision claim and, therefore, entitled to a summary judgment as to that claim.

Conclusion

For the foregoing reasons, we grant the Midfield defendants’ petition in part and direct the circuit court to dismiss the negligence and negligence per se claims against them. We deny the petition as it relates to the negligent-training-and-supervision claim against Midfield.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
STUART, BOLIN, PARKER, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs specially.
SHAW, J., concurs in part and concurs in the result.
MOORE, C.J., concurs in part and dissents in part.

. According to Patrick and the estate, the Honda Accord was parked at Marvin’s address on Nail Street. It was later discovered that the car had earlier been reported stolen in Georgia.

. The Midfield defendants argue in their petition, apparently for the first time, that “State-agent immunity and [Ala.] Code [1975,] § 6-5-338[,] are different rules of law," Midfield defendants’ petition, at 13, and that applying the restatement of State-agent immunity in Cranman to peace-officer immunity under § 6-5-338 " 'has had the effect of making the legislative enactment ineffective in so far as changing the law' governing liability of police officers.” Midfield defendants' petition, at 14-15. However, although the Midfield defendants disagree with this Court’s precedent applying Cranman to peace-officer immunity under § 6-5-338, they have not asked this Court to revisit or to overrule any of its prior decisions and argue, instead, that, even under Cranman, they are entitled to immunity. Therefore, yye need not address this argument at this time.