Rel: 08/29/2014

Notice: This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

### 1130324

_____

**Ex parte Harvey Ruffin, Shelton Patterson, Sandra Giles, and Kenneth Jones**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Thomas Donahey, Jr.**

**v.**

**Harvey Ruffin, Shelton Patterson, Sandra Giles, and Kenneth Jones)**

**(Montgomery Circuit Court, CV-12-0702)**

MAIN, Justice.

1130324

Lt. Harvey Ruffin, a correctional officer at the Bullock Correctional Facility ("the facility"); Sgt. Shelton Patterson, a correctional officer at the facility; Sandra Giles, the deputy warden of the facility; and Kenneth Jones, the warden of the facility (hereinafter referred to collectively as "the petitioners"), the defendants in an action filed by Thomas Donahey, Jr., petition for a writ of mandamus directing the Montgomery Circuit Court to grant their motion for a summary judgment on the ground that they are entitled to immunity. We grant the petition and issue the writ.

## I. Facts and Procedural History

On July 25, 2010, Donahey was attacked and injured while in the custody of the Mental Health Residential Therapeutic Unit of the facility. Donahey was stabbed several times with an ink pen by another inmate, Bruce Smith. During the incident, one of the facility's correctional officers observed several inmates running from one of the inmate dorms. The fleeing inmates reported that another inmate was being stabbed. The correctional officer radioed for immediate assistance. Two correctional officers responded to the call

2

for assistance, including Lt. Ruffin. Lt. Ruffin responded and observed Donahey "sitting on the side of his bed bleeding" and Smith "standing behind Donahey, with his hands held over his head, and stating that 'the voices' had told him to attack Donahey." Donahey was taken to the facility's health-care unit for medical treatment and was later released back to his dormitory. Smith was handcuffed and taken to the facility's stabilization/segregation unit and was charged with assaulting another inmate.

On July 6, 2012, Donahey, acting pro se, sued Lt. Ruffin, Warden Jones, Deputy Warden Giles, and Sgt. Patterson, who was allegedly present while Donahey was being treated in the health-care unit following the attack. Donahey alleged that the petitioners negligently, wantonly, and recklessly failed to protect him from an attack by another inmate. In his complaint, Donahey alleged that the petitioners knew that Smith had a history of violence and that he had attacked other inmates and prison guards. Donahey also alleged that the petitioners knew that Smith did not like Donahey and that they should not have housed Donahey and Smith together. Donahey also alleged that the failure to protect him from the attack

constituted a violation of his rights under the Eighth Amendment to the United States Constitution. Donahey demanded judgment in the amount of $250,000 in compensatory damages and $250,000 in punitive damages.[1]

On August 28, 2013, the petitioners jointly moved for a summary judgment on the ground that they are immune from Donahey's lawsuit. Each petitioner submitted an affidavit in support of the summary-judgment motion. Lt. Ruffin testified that, contrary to Donahey's claims that Smith was known to be violent, Smith's last disciplinary infraction involving any form of violence was in 2005. The petitioners testified that both Donahey and Smith were housed at the mental-health unit and both were receiving treatment for mental-health issues. Warden Jones testified that inmates are routinely housed together unless there is a compelling reason to segregate particular inmates from the general population. The petitioners described the attack as "spontaneous." They testified that the security staff responded immediately to the attack and that medical aid was promptly rendered to Donahey, while Smith was placed in the segregation unit and charged

---

[1]Donahey did not request injunctive or declarative relief.

with a disciplinary violation. Deputy Warden Giles testified that there was nothing that would have given the correctional-security staff reason to foresee Smith's attack on Donahey. Although Sgt. Patterson testified that he did not recall being present at the time of the incident, he stated that security personal quickly notify the mental-health staff any time they witness an inmate in mental distress.

Donahey filed no response and submitted no evidence in opposition to the summary-judgment motion.[2] Thus the sworn statements submitted by the petitioners were uncontroverted. A hearing on the motion was held on November 6, 2013.[3] On November 7, 2013, the trial court entered an order denying the summary-judgment motion without explanation. The petitioners jointly petitioned for a writ of mandamus ordering the Montgomery Circuit Court to enter a summary judgment in their favor on the basis that they are immune from liability.

## II. Standard of Review

Although the denial of a motion for a summary judgment is generally not appealable, this Court has held that the denial

---

[2]Nor did Donahey file an affidavit pursuant to Rule 56(f), Ala. R. Civ. P., seeking time to conduct additional discovery.

[3]No transcript of the hearing is in the record.

1130324

of a motion for a summary judgment grounded on a claim of
immunity is reviewable by a petition for a writ of mandamus.
Ex parte Kennedy, 992 So. 2d 1276, 1280 (Ala. 2008). In such
case, we apply the following standard of review:

> "'"While the general rule is that the denial of
> a motion for summary judgment is not reviewable, ...
> the denial of a motion for summary judgment grounded
> on a claim of immunity is reviewable by petition for
> writ of mandamus." Ex parte Rizik, 791 So. 2d 911,
> 912 (Ala. 2000). A writ of mandamus is an
> extraordinary remedy available only when there is:
> "(a) a clear legal right to the order sought; (2) an
> imperative duty upon the respondent to perform,
> accompanied by a refusal to do so; (3) the lack of
> another adequate remedy; and (4) the properly
> invoked jurisdiction of the court." Ex parte BOC
> Group, Inc., 823 So. 2d 1270, 1272 (Ala. 2001).'"

Kennedy, 992 So. 2d at 1280 (quoting Ex parte Nall, 879 So. 2d
541, 543 (Ala. 2003)).

### III. Analysis

The petitioners invoke a pantheon of immunity defenses.
With regard to Donahey's claims that the petitioners
"negligently, wantonly, and recklessly" failed to protect
Donahey from harm, the petitioners contend that they are
entitled to State-agent immunity. As to Donahey's 42 U.S.C.
§ 1983 claim, based on the alleged violation of his Eighth
Amendment rights, the petitioners assert that they are

6

entitled to qualified immunity. Finally, the petitioners argue that, to the extent they are sued in their official capacities, they are entitled to sovereign immunity. We discuss each argument in turn.

## A.  State-law claims

The petitioners contend that they are entitled to the protection of State-agent immunity with regard to Donahey's claims that the petitioners "negligently, wantonly, and recklessly" failed to protect him from attack. The petitioners are all employees of the Alabama Department of Corrections ("the DOC"). We have previously held that "employees of the DOC are entitled to State-agent immunity when in conducting the activities made the basis of the action they were exercising 'judgment in the administration' of the DOC." Carpenter v. Tillman, 948 So. 2d 536, 538 (Ala. 2006).

The restatement of State-agent immunity as set out in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), governs the determination of whether a State agent is entitled to

7

1130324

immunity.[4]   This Court, in <u>Cranman</u>, stated the test for State-agent immunity as follows:

"A State agent <u>shall</u> be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

"(1) formulating plans, policies, or designs; or

"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:

"(a) making administrative adjudications;

"(b) allocating resources;

"(c) negotiating contracts;

"(d) hiring, firing, transferring, assigning, or supervising personnel; or

"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

---

[4]The test set out in <u>Cranman</u>, a plurality opinion, was subsequently adopted by a majority of the Court in <u>Ex parte Butts</u>, 775 So. 2d 173 (Ala. 2000).

8

"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent <u>shall not</u> be immune from civil liability in his or her personal capacity

"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."

<u>Cranman</u>, 792 So. 2d at 405. This Court has also stated:

"'This Court has established a "burden-shifting" process when a party raises the defense of State-agent immunity.' <u>Ex parte Estate of Reynolds</u>, 946 So. 2d 450, 452 (Ala. 2006). A State agent asserting State-agent immunity 'bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity.' 946 So. 2d at 452. Should the State agent make such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in <u>Cranman</u> is applicable. The exception being argued here is that 'the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.' 946 So. 2d at 452. One of the ways in which a plaintiff can show that a State agent acted beyond his or her authority is by proffering evidence that the State agent failed '"to

9

discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist."' Giambrone v. Douglas, 874 So. 2d 1046, 1052 (Ala. 2003) (quoting Ex parte Butts, 775 So. 2d [173,] 178 [(Ala. 2000)])."

Ex parte Kennedy, 992 So. 2d at 1282-83.

There appears to be no dispute that the petitioners are State agents who, at the time of the incident, were performing a function -- managing the confinement of and/or guarding prisoners with mental illness -- that entitles them to State-agent immunity. See Howard v. City of Atmore, 887 So. 2d 201, 206 (Ala. 2003)("Categories (3) and (4) of [the Cranman] restatement are clearly broad enough to contemplate the confinement of prisoners, which is the conduct in controversy here."). Accordingly, the burden shifted to Donahey to establish the applicability of one of the Cranman exceptions. He failed to do so.

The record before us indicates that Donahey filed no response in opposition to the petitioners' motion for a summary judgment, nor has Donahey offered any evidence indicating that one of the exceptions in Cranman to State-agent immunity is applicable. Therefore, Donahey did not meet his burden of establishing that the petitioners were not

entitled to State-agent immunity with regard to the State-law claims asserted against them in their individual capacities. Accordingly, the respondents are entitled to State-agent immunity as to the claims that they "negligently, wantonly, and recklessly" failed to protect Donahey from an attack by Smith.

## B.  Civil-rights claims

Next the petitioners assert that Donahey's claim that the petitioners violated his civil rights under the Eighth Amendment, a claim made pursuant to 42 U.S.C. § 1983, is barred by the doctrine of qualified immunity.  The doctrine of qualified immunity generally shields government officials who are performing discretionary functions from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights."  Ex parte Madison County Bd. of Education, 1 So. 3d 980, 990 (Ala. 2008).  The United States Supreme Court has recently described the doctrine as follows:

> "'The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."' Pearson v. Callahan, 555 U.S. 223, 231

11

(2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects "all but the plainly incompetent or those who knowingly violate the law."' <u>Ashcroft v. al-Kidd</u>, 563 U.S. __, __ [131 S.Ct. 2074, 2085] (2011)(quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).  '[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.' <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987)(citation omitted)."

<u>Messerschmidt v. Millender</u>, 565 U.S. ___, ___, 132 S.Ct. 1235, 1244-45 (2012).

This Court has recognized a two-part test to determine whether  a public official is entitled to qualified immunity in a § 1983 action:

"In deciding whether a public official ... is entitled to qualified immunity in a § 1983 action, this Court employs the following two-step analysis:

"'"'1) The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

"'"'2) Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part.  This burden is met by proof demonstrating that the defendant public official's actions

"violated clearly established constitutional law."'"'"

Ex parte Sawyer, 876 So. 2d 433, 439 (Ala. 2003)(quoting Couch v. City of Sheffield, 708 So. 2d 144, 155 (Ala. 1998), quoting in turn Roden v. Wright, 646 So. 2d 605, 610 (Ala. 1994)). The second prong is satisfied if the plaintiff proves that "'(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.'" Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010) (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).

In the present case, there appears to be no dispute that the petitioners were acting within the scope of their discretionary authority at the time of the incident. The United States Court of Appeals for the Eleventh Circuit has defined the term "discretionary authority" to include "all actions of a governmental official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994)(quoting Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)). From all the evidence before us, the petitioners were each working within the line and

scope of their various positions at the facility at the time of the allegedly wrongful acts complained of by Donahey, who has submitted no evidence to the contrary. Accordingly, the burden shifted to Donahey to show that the petitioners' actions violated clearly established constitutional law.

Donahey contends that his injuries resulted from the petitioners' alleged "deliberate indifference" to his safety.

> "'A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment.' Farmer v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L. Ed. 2d 811 (1994); see Helling v. McKinney, 509 U.S. 25, 1135 S.Ct. 2475, 125 L. Ed. 2d 22 (1993). '"[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners."' Farmer, 511 U.S. at 833, 114 S.Ct at 1976 (quotations and citations omitted). 'It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liable for prison officials responsible for the victim's safety.' Id. at 834, 114 S.Ct at 1977."

Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003).

In order to defeat the petitioners' properly supported motion for a summary judgment on Donahey's Eighth Amendment "deliberate indifference" § 1983 claim, Donahey was required to produce substantial evidence of "'(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" Carter, 352 F.3d at 1349

14

1130324

(quoting Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995)). Donahey, however, has submitted no evidence indicating that the petitioners were "subjectively aware" of the "substantial risk of serious harm" created by trusting him with Smith. See Farmer v. Brennan, 511 U.S. 825, 829-38 (1994) (defining the term "deliberate indifference" to require a showing that the officer was "subjectively aware of the risk"). To the contrary, the uncontroverted evidence in the record suggests that the attack on Donahey was "spontaneous" and unexpected. Lt. Ruffin testified that Smith, the inmate who attacked Donahey, had received no disciplinary action for any act of violence since 2005; Deputy Warden Giles testified that "[t]here was nothing that would give the correctional security staff reason to expect an attack." Accordingly, Donahey did not provide sufficient evidence showing that his injuries were caused by the petitioners' "deliberate indifference"; thus, Donahey failed to meet his burden of establishing that the petitioners violated clearly established constitutional law.

C. Claims against the petitioners in their official capacities

15

Finally, we note that Donahey did not designate whether the petitioners were being sued in their individual or official capacities. Although the above analysis assumes that the petitioners were sued in their individual capacities, the petitioners argue, and we agree, that, to the extent Donahey asserts claims against them in their official capacities, they are also immune from suit. To the extent that Donahey's action, which seeks only monetary damages, is against the petitioners in their official capacities, his State-law claims are barred by the doctrine of sovereign immunity. See Ala. Const. 1901, § 14; Haley v. Barbour Cnty., 885 So. 2d 785, 788 (Ala. 2004); and Lyons v. River Road Constr., Inc., 858 So. 2d 257, 261 (Ala. 2003). Likewise, Donahey is not permitted to assert a § 1983 claim for money damages against the petitioners in their official capacities. See Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989) (holding that a state official sued in his or her official capacity for damages is not a "person" who may be sued under § 1983).

## IV. Conclusion

Based on the uncontroverted evidence, the petitioners are entitled to immunity from all the claims asserted against them

16

1130324

by Donahey.  Accordingly, the petitioners have shown a clear legal right to the relief sought, and the trial court is directed to enter a summary judgment in their favor.

PETITION GRANTED; WRIT ISSUED.

Moore, C.J., and Stuart, Bolin, Parker, Murdock, Shaw, Wise, and Bryan, JJ., concur.