T.W., individually and as the next friend of J.T., her daughter, a minor, sued the Russell County Board of Education; Regina Deloise Trottman, individually and in her capacity as an instructional assistant at Mount Olive Elementary School; Dyanne D. Hood, individually and in her official capacity as secretary at Mount Olive Elementary School; Willie Ross, individually and in his official capacity as principal of Mount Olive Elementary School; C.W., then an 18-year-old former student of Mount Olive Elementary School; and others, alleging claims of assault and battery, negligence and wantonness, and negligent or wanton supervision or training. Defendants Russell County Board of Education, Hood, Trottman, and Ross moved for a summary judgment, arguing that they were entitled to State-agent immunity. See Ex parte Cranman,792 So.2d 392 (Ala. 2000). The trial court entered a summary judgment for the Russell County Board of Education and Hood, but denied the summary-judgment motion as to Trottman and Ross. Trottman and Ross then petitioned this Court for a writ of mandamus directing the Russell Circuit Court to enter a summary judgment for them on the basis of State-agent immunity. We grant the petition and issue the writ.
 Facts
On November 16, 1999, J.T., then an 11-year-old girl enrolled in the sixth grade at Mount Olive Elementary School, informed her teacher that she was sick and wanted to go home. The teacher instructed J.T. to telephone her mother. J.T. left the classroom and returned a few minutes later. About 45 minutes after J.T. returned, *Page 782 
the teacher was informed that J.T. needed to come to the office to check out of school.
Trottman, an instructional assistant, was assisting in the office that day and, at Ross's direction, was checking students in and out of the school. C.W., an 18-year-old former student at Mount Olive Elementary School, entered the office and spoke with Hood. Trottman did not over-hear their conversation. C.W. then informed Trottman, outside Hood's presence, that he needed to check his sister, J.T., out of school. When J.T. arrived at the office, Trottman checked her out, permitting J.T. to leave with C.W.
After J.T. and C.W. left the school grounds, Trottman remarked to Hood that J.T. had a nice brother. Hood, knowing that J.T. did not have a brother, realized that J.T. had left the school grounds with C.W. under a false pretense. Hood and a teacher left the school grounds to search for J.T. They found J.T. in C.W.'s vehicle, which was parked in a vacant lot near his house. When Hood approached the vehicle, she could see that C.W. was sexually assaulting J.T.; Hood was able to stop the sexual assault before it was completed.
 Standard of Review
"The standard governing our review of an issue presented in a petition for a writ of mandamus is well established:
 "`[M]andamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Barber v. Covington County Comm'n, 466 So.2d 945 (Ala. 1985). In cases involving the exercise of discretion by an inferior court, mandamus may issue to compel the exercise of that discretion. It may not, however, issue to control or review the exercise of discretion except in a case of abuse. Ex parte Smith, 533 So.2d 533 (Ala. 1988).
 "Ex parte Edgar, 543 So.2d 682, 684
(Ala. 1989)."
Ex parte Blankenship, 806 So.2d 1186, 1187
(Ala. 2000).
 Discussion
Ross and Trottman maintain that the trial court exceeded the scope of its discretion when it refused to enter a summary judgment for them on the basis that they were not entitled to the protection of State-agent immunity as provided in Exparte Cranman, supra. According to Ross and Trottman, they are entitled to State-agent immunity for the claim of negligent supervision of students because, they say, their conduct in allowing J.T. to leave the school grounds with C.W. fell within the discretionary function of educating and supervising students. Additionally, Ross argues that he is entitled to State-agent immunity on the claim of negligent supervision of personnel because, he says, his conduct fell within the discretionary function of exercising his judgment in supervising personnel and formulating policies.
In Giambrone v. Douglas, 874 So.2d 1046 (Ala. 2003), this Court set forth the law applicable to our analysis in a case like this one, stating:
 "In [Ex parte] Cranman, [792 So.2d 392
(Ala. 2000)], this Court restated the doctrine of State-agent immunity as follows:
 "`A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's *Page 783 
 "`(1) formulating plans, policies, or designs; or
 "`(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
 "`(a) making administrative adjudications;
 "`(b) allocating resources;
 "`(c) negotiating contracts;
 "`(d) hiring, firing, transferring, assigning, or supervising personnel; or
 "`(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
 "`(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
 "`(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in
releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
 "`Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
 "`(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
 "`(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'
 "792 So.2d at 405. . . .
 "We have established a `burden-shifting' process when a party raises the defense of State-agent immunity. Ex parte Wood, 852 So.2d 705 (Ala. 2002). In order to claim State-agent immunity, the [State agents] bear the burden of demonstrating that [the plaintiffs] claims arise from a function that would entitle them to immunity. Wood 852 So.2d at 709; Ryan v. Hayes, 831 So.2d 21 (Ala. 2002). If the [State agents] make such a showing, the burden then shifts to [the plaintiff], who, in order to deny the [State agents] immunity from suit, must establish that the [State agents] acted willfully, maliciously, fraudulently, in bad faith, or beyond their authority. Wood, 852 So.2d at 709; Ex parte Davis, 721 So.2d 685, 689 (Ala. 1998). A State agent acts beyond authority and is therefore not immune when he or she fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.' Ex parte Butts, 775 So.2d 173, 178 (Ala. 2000)."
874 So.2d at 1051-52.
 A. Claim of Negligent Supervision of Students Asserted Against Ross and Trottman Ex parte Cranman provides State-agent immunity for individuals who are "exercising judgment in the discharge of duties imposed by statute, rule, or regulation in . . . educating students." 792 So.2d at 405. Educating students includes not only classroom teaching, but also supervising and educating students in all aspects of the educational process.
In Ex parte Blankenship, supra, this Court held that a band director and a high *Page 784 
school principal were entitled to State-agent immunity because they were exercising their discretion in educating students when they allowed a 19-year-old male, who was not a student at the school, to participate in the band. InBlankenship, the parents of C.S., a female band member, had asked Harold Blankenship, the band director, to keep C.S. and Jason Howard, the 19-year-old male, separated. When the band returned to Elmore County from marching at a football game in Troy, neither C.S.'s parents nor the parents designated by C.S.'s parents to pick up C.S. were available, even though C.S.'s parents knew that it was their responsibility to provide C.S. with a ride home after the trip. C.S. and a girlfriend left with Howard and his brother, who was at the high school to pick up Howard. At some point after that, C.S. and Howard engaged in sexual intercourse. When C.S. told her parents what had happened, C.S.'s parents reported the incident to the police. They later sued Blankenship and Louie Fryer, the principal, alleging that Blankenship and Fryer had failed to properly supervise C.S. by allowing C.S. to leave the school grounds with Howard.
Blankenship and Fryer moved for a summary judgment, arguing that their actions were protected under the doctrine of discretionary immunity. C.S.'s parents argued that Blankenship and Fryer had exceeded the scope of their discretion and were not entitled to immunity because they had allowed Howard, a nonstudent, to participate in the band when the guidelines established by the Elmore County School Board stated that "a child could not participate in an extracurricular activity on a particular day if the child had not attended school for the entire day." 806 So.2d at 1188. After the trial court denied Blankenship and Fryer's motion, they petitioned this Court for a writ of mandamus directing the trial court to enter a summary judgment in their favor. This Court, recognizing that the guidelines did not limit the discretion of a principal and a band director in allowing nonstudents to participate in the band, held that Blankenship and Fryer were protected under the doctrine of discretionary immunity because their decision to allow Howard to participate in the band was made while they were acting in their official capacity discharging their duties in educating students. We stated:
 "One with 20/20 hindsight might question the wisdom of Blankenship and Fryer's decision to allow a person they thought was a student from a private school outside Elmore County to participate in the band activities and the wisdom of their failing to verify that he was a student at the private school he claimed to attend. State-agent immunity protects agents of the State in their exercise of discretion in educating students. We will not second-guess their decisions."
806 So.2d at 1190.
Applying the reasoning set forth in Blankenship, we conclude that Ross and Trottman are entitled to the protection of State-agent immunity. Ross, in his official capacity as principal of Mount Olive Elementary School, designated Trottman to check students in and out of school on the day J.T. left the school with C.W. The documents before us establish that allowing a student to leave with an older sibling was a standard checkout procedure at Mount Olive Elementary School. As a consequence, Trottman permitted J.T. to leave the school grounds with C.W., who represented to Trottman that he was J.T.'s brother. Therefore, Ross's and Trottman's actions occurred while they were discharging their official duties in educating students. *Page 785 
Because Ross and Trottman established that their conduct was based on their exercise of judgment in educating students, the burden then shifted to T.W. to establish that Ross and Trottman acted "willfully, maliciously, fraudulently, in bad faith, or beyond [their] authority." According to T.W., Ross and Trottman acted beyond the scope of their authority because, she argues, they did not follow the established procedure for allowing a student to check out of school. She maintains that if the procedure designated in the 1998-1999 district-wide handbook and the proposed 1999-2000 Mount Olive Elementary School handbook had been followed, J.T. would not have been allowed to check out and leave the school grounds with C.W. She states that these handbooks provided "detailed rules and regulations," which Ross and Trottman were required to follow, and, because they did not follow these established procedures in deciding to allow J.T. to check out and leave the school grounds with C.W., they exceeded their authority. In support of her argument, she also offered an affidavit stating that when she enrolled J.T. at Mount Olive Elementary School, she completed a form in which she indicated that in the event she could not pick up J.T. at school, only T.W.'s mother or T.W.'s aunt were authorized to pick up J.T. from school.
Ross and Trottman, however, presented evidence indicating that there was not an official checkout policy in place at Mount Olive Elementary School at the time of the incident. They submitted an affidavit from Lee Henderson, the superintendent of education for the Russell County Board of Education at the time of J.T.'s assault. He stated:
 "The Russell County Board of Education did not have any policies, procedures, rules or regulations in place regarding the checking out of students during the 1999-2000 school year. While the Russell County Board of Education did not require each school to have its own handbook during the 1999-2000 school year, we were in a transition period where each school was in the process of formulating its own handbook addressing the specific needs of the school. During this school year, each principal, including Mr. Ross, had the authority to put into effect those procedures which best served the circumstances of their community and school. Each principal also had the authority to delegate the responsibility for checking students out."
Thus, Henderson's affidavit establishes that there was not a district policy regarding checking students out of school. Additionally, Ross and Trottman presented evidence through the depositions of Ross and other faculty and staff working at Mount Olive Elementary School during the 1999-2000 school year indicating that although there was a proposed 1999-2000 handbook for Mount Olive Elementary School, the handbook was never adopted and there was no school policy regarding checking students out of school.[1] Ross and Trottman further state that the enrollment form T.W. completed when she enrolled J.T. at Mount Olive Elementary School did not designate certain individuals to pick J.T. up in the event T.W. could not do so; rather, it provided names of individuals whom the school could contact in case of an emergency.[2] *Page 786 
In light of the foregoing, T.W. has not established that a specific checkout policy existed at Mount Olive Elementary School at the time of the incident; thus, she has not established that a genuine issue of material fact exists as to whether Ross and Trottman exceeded the scope of their discretion by permitting J.T. to leave the school grounds with C.W. Cf. Giambrone v. Douglas, supra (holding that a genuine issue of material fact existed as to whether a wrestling coach was entitled to State-agent immunity because evidence was presented indicating that specific
guidelines and rules had been provided to the coach, thus removing the coach's discretion). Consequently, the trial court exceeded the scope of its discretion by refusing to enter a summary judgment for Trottman and Ross on the ground of State-agent immunity with regard to T.W.'s claim of negligent supervision of students.
 B. Claim of Negligent Supervision of Personnel Asserted Against Ross
Additionally, Ross contends that the trial court exceeded the scope of its discretion in refusing to grant him State-agent immunity with regard to T.W.'s claim that he was negligent in his supervision of school personnel.
Ex parte Cranman provides that an agent of the State is protected from liability for decisions made while exercising his or her judgment in the administration of a department or agency of the State when assigning or supervising personnel.792 So.2d at 405. In Hill v. Allen, 495 So.2d 32 (Ala. 1986), this Court held that a school principal, who was accused of negligent supervision of teachers and aides who had allegedly assaulted mentally retarded students, was entitled to State-agent immunity. In Hill, the students maintained that the principal knew or should have known of the alleged abuses inflicted upon them, yet failed to prevent them. This Court held that the principal was entitled to immunity because he was exercising his judgment in supervising the teachers at the time of the assaults and that he did not exceed the scope of his authority because the students did not allege or establish that the principal had acted fraudulently or in bad faith.
Here, like the principal in Hill, Ross exercised discretion within his authority when he assigned Trottman to check students in and out of school. T.W. did not present any evidence to establish that at the time Ross assigned Trottman, under his supervision, to check students in and out of school Ross acted "willfully, maliciously, fraudulently, in bad faith or beyond his . . . authority." Therefore, Ross is entitled to State-agent immunity with regard to T.W.'s claim that he negligently supervised Trottman.
Finally, T.W. argues that Ross is not entitled to State-agent immunity because, she says, he exceeded the scope of his discretion by failing to formulate and enforce proper checkout procedures at Mount Olive Elementary School.
Ex parte Cranman specifically provides that a State agent is entitled to immunity when formulating policies.792 So.2d at 405. In Louviere v. Mobile County Board ofEducation, 670 So.2d 873 (Ala. 1995), this Court held that a principal of an elementary school was entitled to State-agent immunity on a claim that he "negligently failed to exercise proper safety measures, to monitor school equipment, to maintain safety precautions, and to institute safety measures."670 So.2d at 877. In Louviere an elementary school student was severely burned when she stepped into a hole and her feet and ankles were burned by hot water or steam, which allegedly was caused by an underground boiler pipe. This Court held that the principal was immune from liability, stating:
 "Whatever her action might have been, any decision she might have made was *Page 787 
related to the performance of her duties as principal, and called for `personal deliberation[s], decision[s] and judgment[s]' in the performance of her job. Thus, in making that decision she was engaged in the performance of discretionary functions for which she possessed constitutional immunity."
670 So.2d at 877.
Like the principal in Louviere, Ross is also entitled to State-agent immunity. The development of a checkout policy at Mount Olive Elementary School was within Ross's discretion in making decisions as principal for the school. T.W. did not present any evidence indicating that in formulating the checkout policy Ross acted "willfully, maliciously, fraudulently, in bad faith, or beyond his . . . authority." Therefore, Ross is entitled to State-agent immunity on this claim.
 Conclusion
The facts here, like those in Blankenship, supra, and other similar cases,[3] make us question the wisdom of Ross's and Trottman's decisions as they related to J.T.; hindsight, however, is 20/20, and we will not second-guess their decisions.
Ross and Trottman have established a clear legal right to the relief requested; therefore, we direct the trial court to enter a summary judgment in favor of Ross and Trottman.
PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and LYONS, BOLIN, and MURDOCK, JJ., concur.
[1] T.W. does not contend that she was provided a copy of this draft 1999-2000 handbook.
[2] A copy of this enrollment form is not included in the documents submitted to this Court. According to Ross and Trottman, a copy of the enrollment form was not submitted to the trial court for review. T.W. does not refute this statement.
[3] See, e.g., Ex parte Spivey, 846 So.2d 322
(Ala. 2002); Ex parte Nail, 879 So.2d 541 (Ala. 2003);Ex parte Turner, 840 So.2d 132 (Ala. 2002); andByrd v. Sullivan, 657 So.2d 830 (Ala. 1995).