SHAW, Justice.
Jimmy Walker, a defendant below, petitions this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its order denying his motion for a summary judgment in the action commenced by the plaintiff, Jeremy M. Dea-son, a former inmate in the custody of the Alabama Department of Corrections (“DOC”), alleging negligence and wantonness and to enter a summary judgment in Walker’s favor on the basis of State-agent immunity. We grant the petition and issue the writ.
' ' Facts and Procedural History
While Deason was incarcerated, he participated in a DOC work-release program .and was assigned to an inmate-construction detail; Walker, who was employed as a “carpenter supervisor” with DOC’s Correctional Industries Division, served as Deason’s work-release supervisor. In 2010, Deason suffered an on-the-job injury when scaffolding he and Walker were dismantling collapsed. Before both Deason and Walker’s ascent onto the scaffolding, Walker had performed a visual inspection of the scaffolding and the “mud plates,” which prevent scaffolding from settling, in order to assess the stability of the scaffolding; according to Walker, the scaffolding appeared secure before Deason started ascending.[1]
As a result of his injuries, Deason sued, among other defendants, numerous DOC officials, including Walker, whom Deason sued only in his individual capacity. Specifically, as to Walker, Deason contended that Walker “started climbing the scaffold on the same side as [Deason] knowing that the scaffold was not set up properly for workers to climb the same side at the same time.” During his subsequent deposition testimony, Deason elaborated, explaining that Walker had allegedly supervised the initial erection of the scaffolding, which, according to Walker, was neither anchored to the wall of the adjacent building nor supported by jacks. In his answer to Walker’s petition, Deason lists the alleged tortious actions of Walker as including: “failing to inspect the scaffold just before climbing and then climbing an un-anchored scaffold on the same side and just behind ... Deason.” Deason’s answer and brief,’ at p. 23.
• All claims in Deason’s complaint, excepting the negligence and wantonness claims against Walker, were disposed of either by dismissal or by summary judgment. *635 Walker, too, sought a summary judgment on, among other grounds, State-agent and sovereign-immunity grounds. Deason opposed Walker’s motion, arguing, essentially, that “because the State can never be liable for a tort, any time an, employee of the State commits a tort, he is acting beyond his authority.” On August 5, 2014, the trial court entered an order denying Walker’s summary-judgment motion. In response, Walker filed the instant petition seeking a writ of mandamus directing the trial court to enter a summary judgment in his favor on the basis of State-agent immunity.

Standard of Review

“‘Mandamus is an extraordinary writ and will be issued “ ‘only when there is: (1) a clear legal right in the petitioner to the order sought, (2) an imperative duty upon the respondent to perform, accompanied by a refusal ’to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court.’” Ex parte Land, 775 So.2d 847, 850 (Ala.2000) (quoting Ex parte Horton, 711 So.2d 979, 983 (Ala.1998)). When we consider a mandamus petition, the scope of our review is to determine whether' the trial court clearly exceeded its discretion. Ex parte Tegner, 682 So.2d 396 (Ala.1996).’
“State v. Bui, 888 So.2d 1227, 1229 (Ala.2004). We further note this Court’s general rule that we will.not review the denial of a motion for a summary judgment on a petition for the writ of mandamus because an adequate remedy exists by way of an appeal. Ex parte Par Pharm., Inc., 68 So.3d 767, 775-76 (Ala.2010). However, an exception to that general rule is ‘that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus.’ Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000) (citing Ex parte Purvis, 689 So.2d 794 (Ala.1996)).”
Ex parte Thomas, 110 So.3d 363, 365-66 (Ala.2012).
In addition,
“[t]his Court has established a ‘burden-shifting’ process when a party raises the defense of State-agent immunity. Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiffs claims arise from a function that would entitle the State agent to immunity. Giambrone, 874 So.2d at 1052; Ex parte Wood, 852 So.2d 705, 709 (Ala.2002). If the State agent makes such a showing, the'burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bald fáith, or beyond his or her authority. Giambrone, 874 So.2d at 1052; Wood, 852 So.2d at 709; Ex parte Davis, 721 So.2d 685, 689 (Ala.1998). ‘A State agent acts beyond authority and is therefore not immune when he or she “fail[s] to discharge duties pursuant to detailed rules or regulations, such as thos.e stated on a. checklist.”’ Giambrone, 874 So.2d at 1052 (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala.2000)).”
Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006).

Discussion

In his petition, Walker, citing, among other cases, Carpenter v. Tillman, 948 So.2d 536 (Ala.2006), argues that he is entitled to State-agent immunity because, he says, “[t]he law is clear that ‘employees of the DOC are entitled to State-agent immunity when in conducting the activities made the basis of the action they were *636 exercising “judgment in the administration” of the DOC.’ ” Petition, at 10 (quoting Carpenter, 948 So.2d at 538). According to Walker, at the time of Deason’s injury, Walker, among other things, “was supervising personnel on a work squad and exercising discretion in performing his duties as a supervisor.” Therefore, Walker argues that he is immune from suit pursuant to Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000).[2] We agree.
Alabama law governing actions against State agents is well settled:
“ ‘State-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities.’ Ex parte Hayles, 852 So.2d 117, 122 (Ala.2002). In Cranman, this Court restated the rule governing State-agent immunity:
“‘A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
“ ‘(1) formulating plans, policies, or designs; or
“ ‘(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
‘“(a) making administrative adjudications;
“ ‘(b) allocating resources;
“ ‘(c) negotiating contracts;
“ ‘(d) hiring, firing, transferring, assigning, or supervising personnel; or
“ ‘(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
“ ‘(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; or
“ ‘(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
“ ‘Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“ ‘(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“ ‘(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.’
“792 So.2d at 405.”
Reynolds, 946 So.2d at 453-54.
As Deason notes, to be entitled to the claimed immunity, Walker must generally demonstrate that his acts fall within one of the five categories of conduct set out above. Once Walker makes that demonstration, the burden then shifts to Deason to show that, at the time of Deason’s injury, Walker was “‘actfing] willfully, maliciously, fraudulently, in bad faith, beyond his ... authority, or under a mistaken interpretation of the law.’” Id. We note that, in his answer to Walker’s petition, *637 Deason argues alternatively that Walker’s actions do not fall within any of the five Cranman categories and that he exceeded his authority. The crux of Deason’s argument in opposition to Walker’s petition appears to be that Walker’s alleged negligent and/or wanton conduct with regard, to the inspection and ascent of the scaffolding is sufficient to abrogate Walker’s, entitlement to State-agent immunity. Deason states: “The requirement of State constitutional immunity means that an employee is not immune when he or she commits a tort that does not fit into the immunities enumerated in the first five paragraphs of the [Cranman ] test.”
Walker contends that, at the time of Deason’s accident, he was acting in his discretionary capacity as “carpenter supervisor” and that Ms duties included “supervising, instructing, and training inmates in the specifications of the project” and “conducting safety checks to ensure that safe techniques [were] being utilized with tools, including scaffolding.” Petition, at 14. Walker further contends that his duties and actions in supervising the work site and the inmates, including Deason, “necessarily involve planning, directing, supervising, and making discretionary decisions.” Id Thus, Walker appears to contend that his actions fall within the second category of Cranman. Further, according to Walker’s summary-judgment motion, “[tjhere is no rule or regulation of [DÓC or its subject entities] relating to construction or of scaffolding, how it is to be anchored, climbed, or additional safety equipment that must be used.” Thus, Walker also contends that there is no evidence indicating that he acted beyond his authority.
The supporting evidence Walker submitted indicated that, in his capacity as “carpenter supervisor,” he was generally responsible for supervising the work of inmates, including Deason, and for conducting safety inspections at, the work site.[3] More specifically, the list of general responsibilities on.Walker’s “Employee Performance Appraisal” lists the job .responsibilities of a “carpenter supervisor” as including the following:
“1. Reviews prints, shop drawings and job specifications using all applicable building codes to learn about the work at hand and find discrepancies with no valid complaints.
“2. Visits job sites with inmates following written and oral instructions to work on projects with maximum productivity and no valid complaints.
“3. Reviews purchasing paperwork against all specifications to confirm materials required and identify any problems for maximum productivity and timely completion of assignments.
“4. Receives and stores materials at the job site, verifying materials received, storing materials properly and maintaining] property control with no valid complaints.
“5. Supervises, instructs and trains inmates in the use of any specifications available using hand tools or power tools following all applicable codes in new construction, remodeling, demolition and all related work with no valid complaints.
“6. Completes assignments using inmate labor following all available specifications, proper construction techniques, following instructions, or correcting problems at job sites.
“7. Troubleshoots all inmate work checking for quality work, work meeting specifications, proper construction tech- *638 ñiques, following instructions, or correcting problems at ¿job sites. ■
“8. Conducts safety checks to ensure that inmates use safe techniques- as to power tool usage, all electrical devices, scaffolding, and debris removal.”[4]
The evidence presented in support of Walker’s summary-judgment motion further established that, oh the mórning of Deason’s injury, Walker began the workday by generally instructing his crew that a section of scaffolding had to be taken down. In response to Walker’s instructions, Deason voluntarily ascended the scaffolding; once Deason had reached the top tier of the scaffolding, Walker followed Deason up by ascending the same side of the scaffolding that Deason had climbed. When Walker reached approximately its second tier, the scaffolding began swaying and ultimately toppled, resulting in Dea-son’s claimed injuries.
Deason’s testimony indicated his belief that the work-release center might have a policy governing required “job inspections” for security of job sites; however, according to Deason, to his knowledge, those inspections consist solely of a work-release officer like Walker “com[ing] to jobs and mak[ing] sure the inmates [are] doing what they’re told [and are] properly dressed.” Further, DOC has issued no specific rule or regulation governing either the construction, anchoring, or ascension of scaffolding or the employment of fall-protection or other , safety equipment.[5] More specifically, the record establishes that DOC does not have any guidelines regarding the dismantling of scaffolding and, instead, relies upon the discretion of the carpenter supervisor' as to the performance of such duties. Walker’s eviden-tiary submissions further established that, prior to directing Deason to ascend the scaffolding for dismantling, Walker performed a visual inspection of its condition.
Walker contends that, in light of the foregoing facts and prior decisions of this Court, even assuming that he negligently performed his duties with regard to the inspection and ascension of the scaffolding, those duties were performed in' the line and scope of his discretionary authority as a carpenter supervisor. See Ex parte Randall, 971 So.2d 652, 664 (Ala.2007) (“This Court has previously held that poor judgment or wanton misconduct, an aggravated form of negligence, does not rise to the level of willfulness and maliciousness necessary to put the State agent beyond the immunity recognized in Cramnan. See Giambrone [v. Douglas], 874 So.2d [1046] at 1057 [ (Ala.2003),] (holding that State-agent immunity ‘is not abrogated for negligent and wanton behavior; instead, immunity is withheld only upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority’).”).
The undisputed evidence before us establishes that Walker clearly possessed discretion regarding the day-to-day activities on the job site at which Deason was working, including the delegation of work necessary to complete a particular project — such as the dismantling of the scaffolding. In fact, Walker’s responsibilities specifically include both “[s]upervis[ing]” *639 and “instructfing]” in order to “[c]om-plete[] assignments' using inmate labor.” Nothing before üs indicates that Walker exceeded the scope of his authority as that authority was defined by his supervisors and by the job description. Ex parte Hayles, 852 So.2d 117, 122 (Ala.2002) (“State-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities.”). See also Ex parte Spivey, 846 So.2d 322, 331 (Ala.2002) (“A State agent is ... immune from civil liability for exercising judgment in supervising personnel.”).
Deason disputes that Walker’s inmate work detail constitutes “personnel” as the term is used in Cranman, and he also appears to believe that, because supervision of inmates on work release and, more specifically, the climbing of scaffolding fail to appear as-explicit categories in-’ Cran-man, Walker failed to meet his initial burden of showing that his actions fall within an activity entitling-Walker to immunity under Cranman. As Deason correctly notes, however, the list of conduct enumerated by this Court in Cranman is not exhaustive. See, e.g., Howard v. City of Atmore, 887 So.2d 201, 206 (Ala.2003). .
Moreover,- the caselaw cited by Deason in support of his claim that a State agent “has no authority to act for the state in the commission of a tort,” see Elmore v. Fields, 153 Ala. 345, 350, 45 So. 66, 67 (1907), is notably pre-Cranman. See also DeStafney v. University of Alabama, 413 So.2d 391 (Ala.1981). As this Court noted in Cranman, in DeStajney, the Court “adopted a rule of qualified immunity” that “partially closed the door that had been opened in Elmore.” 792 So.2d at 402. In Cranman, we discussed our prior decisions, including Elmore, recognizing the difficulties — and potential inequities — associated with applying the DeStafney rule to certain discretionary functions and, in an effort to avoid such inconsistent application, restated the rule to result in the current rule, as set out above. 792 So.2d at 405.
Deason further contends that' on-site safety is one of Walker’s job responsibilities arid that, therefore, ensuring the security of the scaffolding “was not something he would have discretion in deciding whether or not to do.” In addition, Dea-son argues that there is no immunity for discharging'duties imposed by a statute, rule, or regulation where the statute, rule, or regulation prescribes the manner for performing those duties and the agent performs accordingly. However, in both his response in opposition to Walker’s summary-judgment motion and his answer to the petition, Deason conceded, and the evidence confirmed, that “[t]here are no written guidelines for-a [carpenter] supervisor to follow in, performing their [sic] duties as a supervisor at a job site,” nor are there any- “written standards used by supervisors on job sites to perform their jobs in a safe manner.” In addition, Deason acknowledged that “[t]here were no written standards, guidelines, or regulations for ... Walker to follow as a carpentry supervisor, and no standard used to determine if ... Walker was competent to be a carpentry supervisor.” More specifically, “‘[t]here [are] no written standards regarding Walker’s responsibilities and results as a carpentry supervisor ... with regard to the erection or deconstruction of scaffolding.” Here, Walker undisputably assessed the security of the scaffolding before he and Deason proceeded to climb it. The fact that Walker allegedly performed that duty in a negligent and perfunctory manner does not in itself deprive Walker of immunity. See Randall, supra.
The record establishes that the actions of which Deason complains amounted to *640 discretionary actions by Walker in allocating resources, assigning duties, and choosing the manner, in which to perform his role as a carpenter supervisor over the job site and the inmates; therefore, the duties Walker was discharging at the time Dea-son was injured were within his authority and required him to exercise judgment in discharging those duties. Further, the record is devoid of any evidence indicating — and Deason does not establish — either that Walker violated any applicable DOC rule or regulation governing his conduct or that Walker was acting “willfully, maliciously, fraudulently, [or] in bad faith” in the exercise of judgment in regard to the scaffolding when Deason was injured. Therefore, Walker has successfully demonstrated that he is entitled to State-agent immunity as to Deason’s tort claims.

Conclusion

In consideration of the foregoing, and applying the law established in Cranman and its progeny to the facts of this case, we conclude that the Montgomery Circuit Court erred in denying Walker’s motion for a summary judgment; because Walker has shown a clear legal right to the relief sought, we issue the writ and direct that court to vacate its previous denial and to enter a summary judgment in favor of Walker on Deason’s claims.
PETITION GRANTED; WRIT ISSUED.
STUART, BOLIN, PARKER, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., and MURDOCK, J., concur in the result.

. Deason's own testimony confirmed that nothing about the scaffolding appeared tinsta-ble before his ascent.

. Cranman was a plurality opinion. The test set forth in Cranman was subsequently adopted by a majority of the Court in Ex parte Butts, 775 So.2d 173, 178 (Ala.2000).

. Deason, who possessed carpentry experience, had worked under Walker’s supervision for more than a year before the accident.

. According to Walker, other than the foregoing, he has never received anything in writing detailing the duties and responsibilities of his position. Testimony from other DOC personnel confirms that there are no written guidelines or regulations for a carpenter supervisor to follow in performing his or her duties at a 'job site, nor are there any written standards for performing the job in a "safe manner.”

. Deason’s counsel acknowledged on the record below that Occupational Safety and Health Administration regulations did not apply in this case.