Rel: September 19, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

————————————————

### SC-2025-0064

————————————————

**Ex parte Darryl Riche**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Sharonda McIntosh**

**v.**

**Clarence Sutton, in his individual capacity and in his official capacity as Superintendent of Huntsville City Schools, et al.)**

**(Madison Circuit Court: CV-23-901077)**

McCOOL, Justice.

Darryl Riche, an employee of the Huntsville City Schools Board of Education ("the Board"), has petitioned this Court for a writ of mandamus, asking us to direct the Madison Circuit Court to enter a summary judgment in his favor with respect to the claims that Sharonda McIntosh has asserted against him.

Facts and Procedural History

Since 2015, Riche has served as the "stadium manager" for Milton Frank Stadium, which is owned by the Board. The Board uses Milton Frank Stadium to host school events such as football games, soccer games, lacrosse games, and track-and-field competitions, and community events such as food drives, car shows, and church services are held in the stadium as well. According to Riche, he is a "one man operation" whose duties include "just basic stuff" such as "ensur[ing] that … restrooms are operable," "minor maintenance like changing lights," "unlocking the facility" for events, and "turn[ing] on the cooling system for the locker rooms." Riche's duties also require him to "inspect … the property" to determine whether "there [is] anything there that …, in [his] judgment, would be a hazard or a danger to someone [who] came on the property." If Riche determines that there is a dangerous condition that needs to be

2

repaired, he contacts Elizabeth Arthur, who "handle[s] work orders for repairs," and "text[s] her pictures of the area that need[s] repair." Arthur then contacts an independent contractor, which performs the repair. According to William Priest, the maintenance director for the Board, "[t]here are no policies or procedures which specifically address the work order system, or the reporting or correcting of problems or defects on Board properties." Rather, "Board employees are expected to use good judgment in deciding when a particular condition warrants a work order." Regarding Riche specifically, Priest has explained that "Riche has the discretion to use his best judgment to determine whether any maintenance issues need to be addressed at Milton Frank Stadium."

Inside Milton Frank Stadium there is an asphalt walkway ("the walkway") that lies between the bleachers and the area where the school and community events are held, and attendees of the events use the walkway to access the bleachers. At some point before September 2021, Riche noticed that the walkway "had a … crack … that needed repair" because it "could constitute a trip hazard for someone walking in that area." Thus, Riche contacted Arthur and texted her pictures of the crack, and Arthur created a work order to have the crack repaired. Riche then

3

placed an orange cone near the crack to "mark it," which was his "general practice," and he "put sand in [the crack] also to highlight that … the area was breached" and to "warn people that were walking that the breach was present." However, based on past experiences, Riche realized that the orange cone might be "moved by the kids," and he also realized that, "if the wind bl[ew], [the sand was] going to come out" of the crack.

In September 2021, McIntosh attended a football game at Milton Frank Stadium. At that time, the crack in the walkway had not yet been repaired, and, while walking to her seat in the bleachers, McIntosh tripped in the crack and fell. According to McIntosh, as a result of her fall she "suffered numerous injuries to her right foot and lower back" and "will never be the same." It does not appear that the orange cone that Riche had placed near the crack was still in place at that time, but it does appear that there was sand in and around the crack at the time of McIntosh's accident.[1]

---

[1]McIntosh returned to Milton Frank Stadium approximately two weeks after her accident so that she could photograph the crack in the walkway. Those photographs clearly show sand in and around the crack.

McIntosh subsequently filed a complaint against Riche and four other Board employees, in which she sought to recover damages based on theories of negligence, wantonness, premises liability, negligent and/or wanton undertaking, and "combining and concurring negligence." McIntosh sued all the defendants in both their official and individual capacities, and all the defendants filed motions for a summary judgment in which they asserted the defenses of sovereign immunity and State-agent immunity.[2] Thereafter, McIntosh agreed that three of the defendants were due to be dismissed from the case, and the circuit court entered a summary judgment in favor of a fourth defendant, thus leaving Riche as the only remaining defendant.

In her response to Riche's summary-judgment motion, McIntosh argued that Riche was not entitled to sovereign immunity because, she said, he had "acted beyond [his] authority, maliciously, fraudulently, willfully, in bad faith[,] or under a mistaken interpretation of the law." McIntosh also argued that Riche was not entitled to State-agent immunity because, she said, his actions "did not fall within any category

---

[2]Riche asserted other arguments as well, but he has not raised those arguments in his petition to this Court.

[of State-agent immunity] enumerated in Ex parte Cranman[, 792 So. 2d 392 (Ala. 2000)]."

The circuit court held a hearing on Riche's summary-judgment motion, but, if a transcript of that hearing exists, it has not been provided to this Court. On December 19, 2024, the circuit court denied Riche's motion, without stating its reasons. Riche then timely petitioned this Court for a writ of mandamus, arguing that he is entitled to a summary judgment based on both sovereign immunity and State-agent immunity.

Standard of Review

"The standard of review applied to a petition seeking the issuance of a writ of mandamus is well settled:

"'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'

"Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995)."

Ex parte Caremark Rx, LLC, 229 So. 3d 751, 756 (Ala. 2017).

"Although the denial of a motion for a summary judgment is generally not appealable, this Court has held that the denial of a motion for a summary judgment grounded on a claim of immunity is reviewable by a petition for a writ of

6

mandamus. <u>Ex parte Kennedy</u>, 992 So. 2d 1276, 1280 (Ala. 2008)."

<u>Ex parte Ruffin</u>, 160 So. 3d 750, 753 (Ala. 2014) (emphasis omitted).

Analysis

In his petition to this Court, Riche reasserts his argument that he is entitled to immunity from the claims that McIntosh has asserted against him. Specifically, Riche argues that he is entitled to sovereign immunity with respect to the claims that McIntosh has asserted against him in his official capacity and that he is entitled to State-agent immunity with respect to the claims that she has asserted against him in his individual capacity. We will address each argument in turn.

I. Official-Capacity Claims

Riche first argues that he is entitled to sovereign immunity with respect to the claims that McIntosh has asserted against him in his official capacity. In <u>Ex parte Wilcox County Board of Education</u>, 279 So. 3d 1135 (Ala. 2018), this Court stated:

> "It is well settled law that the State is generally immune from liability under § 14, Alabama Constitution of 1901. It is also well settled that the State cannot be sued indirectly by suing an officer in his or her official capacity.
>
>> "'Sovereign immunity is a jurisdictional bar that deprives a court of subject-matter

7

> jurisdiction. <u>Ex parte Dep't of Mental Health & Mental Retardation</u>, 837 So. 2d 808, 810-11 (Ala. 2002). The principle of sovereign immunity, set forth in Article I, § 14, Alabama Constitution of 1901, is a wall that is "nearly impregnable." <u>Patterson v. Gladwin Corp.</u>, 835 So. 2d 137, 142 (Ala. 2002). The implications of sovereign immunity are "'not only that the state itself may not be sued, but that this cannot be <u>indirectly</u> accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to <u>affect the financial status of the state treasury</u>.'" <u>Patterson</u>, 835 So. 2d at 142 (quoting <u>State Docks Comm'n v. Barnes</u>, 225 Ala. 403, 405, 143 So. 581, 582 (1932)).'
>
> "<u>Ex parte Alabama Dep't of Mental Health & Mental Retardation</u>, 937 So. 2d 1018, 1022-23 (Ala. 2006)."

279 So. 3d at 1140-41.

City and county boards of education are agencies of the State and, as such, are entitled to sovereign immunity, i.e., they cannot be sued. <u>Ex parte Montgomery Cnty. Bd. of Educ.</u>, 270 So. 3d 1171, 1173 (Ala. 2018). As for the employees of those local boards of education, the Alabama Legislature has provided that the doctrine of sovereign immunity prohibits a plaintiff from seeking to recover damages from them in their official capacities. Section 36-1-12, Ala. Code 1975, states, in relevant part:

"(a) For the purposes of this section, 'education employee' means a certified or noncertified employee of the State Board of Education <u>or any local board of education</u> and an employee of the Alabama Institute for Deaf and Blind, the Alabama School of Fine Arts, the Department of Youth Services, or the Alabama School of Mathematics and Science.

"(b) An officer, employee, or agent of the state, including, but not limited to, <u>an education employee</u>, acting in his or her <u>official capacity</u> is <u>immune from civil liability</u> in any suit pursuant to Article I, Section 14, of the Constitution of Alabama of 1901."

(Emphasis added.)

There are six well-established "exceptions" to sovereign immunity that allow a plaintiff to bring certain limited actions against State employees (though not the State itself or its agencies).[3]  <u>See</u> <u>Ex parte Wilcox Cnty. Bd. of Educ.</u>, 279 So. 3d at 1141-42 (listing the "exceptions" to sovereign immunity).  However, none of those "exceptions" allow a plaintiff to bring a claim for damages against a State employee when the claim is asserted against the employee in his or her <u>official</u> capacity.  <u>Id.</u> Rather, a plaintiff may bring a claim for damages against a State

_____

[3]Although these actions are called "exceptions," they are not truly exceptions to sovereign immunity but, instead, are simply not actions against the State.  Indeed, each of the six "exceptions" explicitly authorizes an action against a State official, not the State itself or its agencies.  <u>Ex parte Wilcox Cnty. Bd. of Educ.</u>, 279 So. 3d at 1141-42.

employee only if the claim is asserted against the employee in his or her individual capacity. See id. at 1142 (noting that the only "exception" to sovereign immunity that authorizes a claim for damages against a State employee is the one permitting "'actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State'" (emphasis added; citation omitted)).

It is undisputed that Riche is an employee of the Board; indeed, McIntosh has conceded in her answer to Riche's petition that, "at all times relevant to this case, [Riche] was an employee of the Huntsville City Schools, serving as the 'stadium manager' of Milton Frank Stadium." Answer, p. vi. It is also clear that McIntosh's claims against Riche are straightforward claims for damages. Thus, McIntosh's claims against Riche, to the extent that they have been asserted against him in his official capacity, are barred by the doctrine of sovereign immunity. McIntosh correctly argues that sovereign immunity does not bar a claim for damages against a State employee when it is alleged that the

10

employee "acted beyond [his or her] authority, maliciously, fraudulently, willfully, in bad faith[,] or under a mistaken interpretation of the law," id., p. 4, but, as noted, that "exception" to sovereign immunity applies only when the State employee has been sued in his or her individual capacity. Ex parte Wilcox Cnty. Bd. of Educ., 279 So. 3d at 1142. Consequently, that argument has no bearing on whether Riche is entitled to a summary judgment on the official-capacity claims. Having determined that Riche is entitled to a summary judgment on the official-capacity claims, we turn to his argument that he is entitled to a summary judgment on the individual-capacity claims.

## II. Individual-Capacity Claims

Riche argues that he is entitled to State-agent immunity with respect to the claims that McIntosh has asserted against him in his individual capacity. The test for State-agent immunity was established by a plurality of this Court in 2000 in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), and was adopted by a majority of this Court later that year in Ex parte Butts, 775 So. 2d 173 (Ala. 2000). In 2014, the Alabama Legislature codified the test for State-agent immunity with the enactment of § 36-1-12, which states, in relevant part:

"(c) An officer, employee, or agent of the state, including, but not limited to, an education employee, is immune from civil liability in his or her personal capacity when the conduct made the basis of the claim is based upon the agent's doing any of the following:

"(1) Formulating plans, policies, or designs.

"(2) Exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:

"a. Making administrative adjudications.

"b. Allocating resources.

"c. Negotiating contracts.

"d. Hiring, firing, transferring, assigning, or supervising personnel.

"(3) Discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the state agent performs the duties in that manner.

"(4) Exercising judgment in the enforcement of the criminal laws of the state, including, but not limited to, law enforcement officers' arresting or attempting to arrest persons.

"(5) Exercising judgment in the discharge of duties imposed by statute, rule, or regulation in

12

releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

"(d) Notwithstanding subsection (c), an education employee, officer, employee, or agent of the state is not immune from civil liability in his or her personal capacity if:

"....

"(2) The education employee, officer, employee, or agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."

In Ex parte Estate of Reynolds, 946 So. 2d 450, 452 (Ala. 2006), this

Court stated:

"This Court has established a 'burden-shifting' process when a party raises the defense of State-agent immunity. Giambrone v. Douglas, 874 So. 2d 1046, 1052 (Ala. 2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. Giambrone, 874 So. 2d at 1052; Ex parte Wood, 852 So. 2d 705, 709 (Ala. 2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Giambrone, 874 So. 2d at 1052; Wood, 852 So. 2d at 709; Ex parte Davis, 721 So. 2d 685, 689 (Ala. 1998)."

Riche argues that he is entitled to State-agent immunity under

§ 36-1-12(c)(5), which, as noted, provides that an "education employee"

such as Riche is immune from civil liability in his individual capacity for

13

acts that involve "[e]xercising judgment in the discharge of duties imposed by statute, rule, or regulation in … educating students."[4] Although § 36-1-12(c)(5) uses the phrase "educating students," that phrase is not limited to teachers and administrators or to conduct that occurs inside a classroom or other teaching environment. Rather, "Alabama caselaw establishes that employees who work in the educational system, other than teachers and administrators, are entitled to State-agent immunity because the performance of jobs in areas other than the classroom involves the 'supervising and educating of students.'" Ex parte Mason, 146 So. 3d 9, 13 (Ala. 2013) (emphasis added). See also Ex parte Trottman, 965 So. 2d 780, 783 (Ala. 2007) ("Educating students includes not only classroom teaching, but also supervising and educating students in all aspects of the educational process."). Thus, by way of example, State-agent immunity has been held to apply to janitors, secretaries, bus drivers, and maintenance workers who were employed by a local board of education. See Ex parte Mason, supra.

---

[4]Riche also argues that he is entitled to State-agent immunity under § 36-1-12(c)(2)b. and § 36-1-12(c)(3), but he cites no authority to support those arguments.

14

In support of his argument that he is entitled to State-agent immunity, Riche cites Louviere v. Mobile County Board of Education, 670 So. 2d 873 (Ala. 1995), and Bathgate v. Mobile County Board of School Commissioners, 689 So. 2d 109 (Ala. Civ. App. 1996).

In Louviere, Ossie McDougle, the janitor at an elementary school, was notified by a student's parent that steam from an underground boiler pipe was escaping from a hole in the ground outside the school. McDougle covered the hole with a piece of plywood, notified the principal that he had done so, and then went about his routine janitorial duties. A few minutes later, McDougle returned to the hole "to find that the plywood had been moved" and that a student had been burned by the steam when she stepped into the hole. 670 So. 2d at 878. The student later sued McDougle in McDougle's individual capacity, and McDougle moved for a summary judgment, "claiming discretionary function immunity." Id. at 875. The Mobile Circuit Court granted McDougle's motion, and the student argued on appeal to this Court that McDougle was not entitled to immunity because, she said, he had "negligently failed to take necessary steps to ensure [her] safety after he had notice of the dangerous

condition on the school property." Id. at 878. In affirming the summary judgment, this Court stated:

> "McDougle's actions, right or wrong, were discretionary, because he had had no previous instructions or responsibilities regarding the heating system, boiler pipes, or escaping steam. When McDougle placed the plywood over the hole, he was making personal, discretionary judgments concerning the appropriate action to take under the circumstances. Therefore, he was entitled to discretionary immunity."

Id.

In Bathgate, pigeons had infested a high school, and a student contracted cryptococcal meningitis after he was exposed to pigeon feces. The student sued multiple school employees, including Wilton Lowery, the maintenance engineer for the high school, and Alfred Kearley, the maintenance supervisor for the school board, alleging that they had "fail[ed] to prevent an unsafe condition from developing at [the school]." 689 So. 2d at 112. The Mobile Circuit Court entered a summary judgment in favor of Lowery and Kearley, "finding that [they] were entitled to discretionary immunity," and the student appealed to the Court of Civil Appeals. Id. at 111. After noting that Lowery and Kearley had taken "numerous and repeated actions to deal with the alleged pigeon infestation," the Court of Civil Appeals stated:

16

> "We find that … Wilton Lowery[] and Alfred Kearley were entitled to discretionary immunity. The actions that they took regarding the pigeon droppings and the alleged infestation, whether right or wrong, were based on personal deliberations. Byrd v. Sullivan, 657 So. 2d 830 (Ala. 1995). There were no 'hard or fast' rules as to how to handle an alleged pigeon infestation. Louviere. The trial court did not err in entering a summary judgment in their favor."

Id. at 112.

Louviere and Bathgate were decided before this Court adopted, and before the Alabama Legislature codified, the test for State-agent immunity. Thus, those cases applied the test for discretionary immunity, "a precursor to State-agent immunity," Ex parte Wilcox Cnty. Bd. of Educ., 374 So. 3d 641, 647 (Ala. 2022), and that test provided that "'immunity from tort liability [is] afforded to public officials acting within the general scope of their authority in performing functions that involve a degree of discretion.'" Ex parte Estate of Reynolds, 946 So. 2d at 454 (citation omitted). However, under the test for State-agent immunity, "not all discretionary acts by an agent of the State should be labeled as '"immune."'" Id. at 456 (quoting Ex parte Cranman, 792 So. 2d at 405). Rather, State-agent immunity is afforded to a State employee for his or her discretionary acts only if those acts fit within one of the categories in § 36-1-12(c). See Ex parte Rizk, 791 So. 2d 911, 914 (Ala. 2000) (holding

17

that the defendant was not entitled to State-agent immunity because his conduct "d[id] not fit within any of the categories of immune State-agent conduct contained in … <u>Cranman</u>").

That said, this Court has cited <u>Louviere</u> and <u>Bathgate</u> as persuasive authority in a post-<u>Cranman</u> case, i.e., in a State-agent-immunity case. In <u>Ex parte Mason</u>, <u>supra</u>, George Mason was employed as a bus driver by the Macon County Board of Education. While driving his route one afternoon, Mason dropped off a fifth-grade student at what was allegedly an "[in]appropriate school-bus stopping point," 146 So. 3d at 11, and the student was struck by an automobile while attempting to cross a four-lane highway. The student sued Mason in Mason's individual capacity, and Mason moved for a summary judgment on the basis of State-agent immunity. Following the denial of his motion, Mason petitioned this Court for a writ of mandamus, arguing that he was entitled to State-agent immunity because, he said, "the claims against him [were] based on acts arising from his performance of official duties and exercise of discretion in supervising students." <u>Id.</u> at 13. This Court agreed with Mason and, in support of its holding, stated:

> "Alabama caselaw establishes that employees who work in the educational system, other than teachers and

18

administrators, are entitled to <u>State-agent immunity</u> because the performance of jobs in areas other than the classroom involves the 'supervising and educating of students.' See <u>Louviere v. Mobile Cnty. Bd. of Educ.</u>, 670 So. 2d 873 (Ala. 1995) (recognizing that janitors and steamfitters are entitled to discretionary immunity); <u>Ex parte Trottman</u>, [965 So. 2d 780 (Ala. 2007)] (recognizing that school secretaries and office clerical assistants are entitled to State-agent immunity); <u>Bathgate v. Mobile Cnty. Bd. Sch. Comm'rs</u>, 689 So. 2d 109 (Ala. Civ. App. 1996) (recognizing that maintenance engineers and facilities managers are entitled to discretionary immunity); and <u>Lennon v. Petersen</u>, 624 So. 2d 171 (Ala. 1993) (recognizing that athletic trainers are entitled to discretionary immunity)."

<u>Id.</u> (footnote omitted; emphasis added). <u>See also</u> <u>Ex parte Runnels</u>, 364 So. 3d 979 (Ala. 2022) (citing <u>Louviere</u> as persuasive authority in a State-agent-immunity case).

As evidenced by the foregoing quote, this Court acknowledged in <u>Mason</u> that <u>Louviere</u> and <u>Bathgate</u> had been decided under the discretionary-immunity test, rather than under the test for State-agent immunity. Nevertheless, the Court cited those cases for the principle that "the performance of jobs in areas other than the classroom involves the 'supervising and educating of students.'" <u>Ex parte Mason</u>, 146 So. 3d at 13 (citation omitted). In other words, the Court indicated that the janitor's act of covering a hole in the ground in <u>Louviere</u> and the maintenance workers' attempts to deal with a pigeon infestation in

19

Bathgate were discretionary acts that constituted "the 'supervising and educating of students,'" even though those defendants were not directly "supervising" students when they performed those acts. Id. (citation omitted). That conclusion is sound, too, because, although the defendants in those cases were not directly "supervising" students, they were attempting to address dangerous conditions on school property that students frequently used. Taking actions in an attempt to protect the safety of students is fairly characterized as "supervising" students, even if no students happen to be present at that time.

With that said, Riche argues that the analysis in Louviere and Bathgate is applicable in this case. We agree. The evidence in those cases indicated that the defendants used their discretion in attempting to address dangerous conditions on school property, and this Court and the Court of Civil Appeals, respectively, held that the defendants were entitled to immunity for those discretionary acts. Similarly, the evidence in this case indicates that Riche used his discretion in attempting to address the crack in the walkway at Milton Frank Stadium, which is owned by the Board, and he is likewise entitled to immunity for his discretionary acts. Although Riche was not directly "supervising"

20

students at that time, his acts were no less "supervisory" than covering a hole in the ground with a piece of plywood (<u>Louviere</u>) or attempting to manage a pigeon infestation (<u>Bathgate</u>), and, as noted, this Court has previously indicated that those acts constituted "the 'supervising and educating of students.'" <u>Ex parte Mason</u>, 146 So. 3d at 13 (citation omitted).

We therefore hold that Riche has carried his burden of demonstrating that he is entitled to State-agent immunity under § 36-1-12(c)(5) with respect to the claims that McIntosh has asserted against him in his individual capacity. Thus, the burden shifts to McIntosh to demonstrate that Riche "acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." <u>Ex parte Estate of Reynolds</u>, 946 So. 2d at 452. In an attempt to carry that burden, McIntosh relies on the evidence indicating that Riche "knew students would remove warning cones[] and that wind would blow the sand out of the breaches he personally filled." Answer, p. xvi. Armed with that evidence, McIntosh argues that Riche put these warning signs in place "without the follow-up required to replace sand blown away or cones moved by students," <u>id.</u> at 2, and, according to McIntosh, Riche's alleged lack of follow-up

21

constituted either "a negligent act beyond reasonableness" or "wantonness." Id. at xvi, 9.

However, under current Alabama law, "'State-agent immunity "is not abrogated for negligent and wanton behavior; instead, immunity is withheld only upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority."'" Ex parte City of Montgomery, 272 So. 3d 155, 168 (Ala. 2018) (citations omitted). See also Ex parte City of Warrior, 369 So. 3d 116, 126 n.9 (Ala. 2022) ("To the extent that Griffin alleges that negligent or wanton conduct alone falls within the second Ex parte Cranman exception, this Court has rejected that argument."); and Ex parte Walker, 188 So. 3d 633, 638 (Ala. 2015) (noting that "'wanton misconduct … does not rise to the level of willfulness and maliciousness necessary to put [a] State agent beyond the immunity recognized in Cranman'" (citation omitted)). Thus, because McIntosh argues that Riche's allegedly tortious acts constituted only negligence or, at worst, wantonness, she has failed to allege, much

less demonstrate, that an exception to State-agent immunity applies in this case.[5]

## Conclusion

Riche has demonstrated that he is entitled to sovereign immunity with respect to the claims that McIntosh has asserted against him in his official capacity. Riche has also demonstrated that he is entitled to State-agent immunity with respect to the claims that McIntosh has asserted against him in his individual capacity, and McIntosh has failed to demonstrate that an exception to State-agent immunity applies. Thus, the circuit court erred by denying Riche's motion for a summary judgment. We therefore grant Riche's petition for a writ of mandamus and direct the circuit court to enter a summary judgment in his favor.

PETITION GRANTED; WRIT ISSUED.

---

[5]Almost 20 years ago, a former Justice on this Court suggested that "it may be that the Cranman exception for 'willful' actions should be construed as including 'wanton' conduct." Ex parte Randall, 971 So. 2d 652, 679 (Ala. 2007) (Murdock, J., dissenting). This Court rejected that proposition in Ex parte Randall and, in more recent decisions, has continued to hold that wantonness is not an exception to State-agent immunity. See, e.g., Ex parte City of Montgomery, supra; Ex parte City of Warrior, supra; and Ex parte Walker, supra. McIntosh has not asked us to overturn those decisions.

Stewart, C.J., and Shaw, Wise, Bryan, Sellers, Mendheim, Cook, and Lewis, JJ., concur.